UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

————————————

KATHRYN ROSE ZIELINSKI,

          Plaintiff,                             Case No.  1:15-cv-760

v.

                                              HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant,

————————————————————/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Kathryn Zielinski seeks review of the Commissioner's decision denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings

are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).  The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 22 years of age on the date of the Administrative Law Judge's (ALJ) decision.  (PageID.111, 138.)  She completed high school and some college classes, and was previously employed as a cafeteria worker and cashier, however the ALJ determined those positions did not amount to past relevant work.  (PageID.140, 159, 197.)  Plaintiff filed for benefits on August 15, 2012, alleging that she had been disabled since December 1, 2011, due to mental health issues and chronic depression.  (PageID.189, 259–264.)  Plaintiff's application was denied on November 21, 2012, after which time she requested a hearing before an ALJ. (PageID.202–205).  On November

5, 2013, Plaintiff appeared with her counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE).  (PageID.131–165.)  In a written decision dated January 17, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.111–130.)  On May 29, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter.  (PageID.24–30.)  Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. § 416.920(a-f).[1]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. § 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).

---

[1]1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 416.920(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 416.920(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 416.920(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 416.920(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 416.920(f)).

*See* 20 C.F.R. § 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ began her analysis by noting that Plaintiff had not engaged in substantial gainful activity since her application date. (PageID.116.) At the second step, the ALJ found that as of the application date, Plaintiff had the severe impairments of schizoaffective disorder and substance addiction disorder. (PageID.117.) At the third step, the ALJ found that these impairments met sections 12.04 (affective disorders) and 12.09 (substance addiction disorders) of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App.1. (PageID.117–18.)

After reaching this determination, the ALJ reviewed Plaintiff's claim without consideration of limitations caused by her substance use. *See* 20 C.F.R. § 404.1535(a) ("[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability"); *Siemon v. Comm'r of Soc. Sec.*, 72 F. App'x 421, 422 (6th Cir. 2003) ("the social security administration must deny a claim for benefits if drug addiction or alcohol is a contributing factor material for a finding of disability").

Beginning the analysis again, the ALJ found that if Plaintiff stopped the substance use, her remaining limitations would cause more than a minimal impact on her ability to perform basic work activities, and accordingly would continue to have severe impairments. (PageID.118.)

4

At the third step, the ALJ found that if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that met or medically equaled any of the impairments in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.118–120.)  At the fourth step, the ALJ found that if Plaintiff stopped the substance use, she would have the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant would be limited to simple, routine tasks with no more than simple, short instructions, simple work-related decisions, and few changes in the workplace; while the claimant could tolerate occasional interaction with co-workers, she would have to avoid all contact with the general public.

(PageID.120.)  Continuing with the fourth step, the ALJ determined that Plaintiff had no past relevant work.  (PageID.124.)

At the fifth step, the ALJ determined that if Plaintiff stopped the substance use, she could perform a significant number of unskilled, medium jobs in the national economy. (PageID.67–68.)  The ALJ relied on the VE's testimony that Plaintiff could perform the following work in the state of Michigan: machine feeder (15,500 jobs), cleaner (25,600 jobs), and packager (7,200 jobs).  (PageID.159–160.)  Based on this record, the ALJ found that if Plaintiff stopped the substance use, she would be capable of making a successful adjustment to work that exists in significant numbers in the national economy and would be found not disabled.  (PageID.125.)

The ALJ concluded, therefore, that the substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance abuse.   (PageID.126.) (citing 20 C.F.R. § 416.920(g) and 416.935). Accordingly, the ALJ found that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from August 15, 2012, through January 17, 2014 (the date of decision).

**DISCUSSION**

5

Plaintiff raised four issues on appeal.

**1.     This court should consider the post-hearing evidence.**

Plaintiff's statement of facts mentions that after the ALJ's decision in this matter, she was admitted to Pine Rest for treatment of her mental impairments.  (PageID.592–593.)  Plaintiff also cites to additional treatment she received after the hearing.  (PageID.593–96.)    Plaintiff contends that this new evidence was not available at the administrative hearing and is relevant to the determination of her claim.  (PageID.600.)  While Plaintiff apparently wants the Commissioner to consider this new evidence pursuant to sentence six of § 42 U.S.C. § 405(g), she does not provide the Court with a sufficient argument to support this claim.  Accordingly, the Court deems this issue waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").  Plaintiff's counsel apparently blames the Court's routine use of page limits for his inability to provide a properly developed argument.  (PageID.637.)  But Plaintiff's counsel requested, and was granted, a waiver of page limits in this matter.  (PageID.606.)  Accordingly, Plaintiff's first argument is rejected.

**2.     The ALJ committed reversible error by failing to consider all of Plaintiff's severe impairments.**

As noted above, the ALJ determined that Plaintiff suffered from the severe impairment of schizoaffective disorder.  (PageID.118.)  Plaintiff argues, however, that she is entitled to relief because the ALJ should also have found that she suffered from the severe impairments of borderline intellectual functioning and ADHD.  (PageID.601.)

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment.   A severe impairment is defined

as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); *see also Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 929 n.2 (6th Cir. 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)); *see also Williamson v. Sec'y of Health & Human Servs.*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

Step two of the sequential disability process is considered a "de minimis hurdle" designed to subject to dismissal only those claims which are "totally groundless" from a medical standpoint. *Rogers*, 486 F.3d at 243 n.2; *Despins*, 257 F. App'x at 929; *Higgs*, 880 F.2d at 860. "[T]his lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Long v. Apfel*, 1 F. App'x 326, 331 (6th Cir.

Jan. 9, 2001) (quoting *Higgs*, 880 F.2d at 862).

The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering her decision.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error").  The record shows the ALJ found that, even without her substance use, Plaintiff would still have severe impairments. A review of the ALJ's decision makes clear that in doing so, the ALJ considered the entire record and all of Plaintiff's impairments and limitations.    Plaintiff's arguments to the contrary are unavailing.  The ALJ indicated she had carefully considered "the entire record."  (PageID.116.) "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered").  *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005).  Plaintiff cites to diagnoses, but such does not point to the severity of any alleged impairment.  Accordingly, Plaintiff's second claim of error fails.

**3.    The ALJ committed reversible error by adopting an RFC for Plaintiff which was not supported by the evidence.**

On October 21, 2013, Dr. Tariq Faridi filled out a checkbox worksheet regarding Plaintiff's mental impairments.  (PageID.482–484.)  The doctor found that Plaintiff had marked to extreme limitations[2] in the areas of making occupational adjustments, making performance

---

[2] The worksheet defined marked limitations as those that seriously, but not completely, interfered with the claimant's ability to function independently, appropriately, and effectively on a sustained basis.  Extreme limitations reflected a degree of limitation that was incompatible with the

adjustments, and in the area of functional limitations.  Plaintiff had moderate to marked limitations in the area of making personal / social adjustments.[3]  (PageID.482–484.)  In several places, the worksheet asked Dr. Faridi to identify supportive medical findings or clinical notes.  Dr. Faridi declined to do so in all but one instance, in which he appears to write that Plaintiff's marked limitations in the area of performance adjustments were "because of her psychosis."  (PageID.483.)  The ALJ noted that since Dr. Faridi was Plaintiff's treating physician, he had a "particular and detailed knowledge regarding the nature and severity of the claimant's functional limitations" and accordingly his opinion was entitled to "great weight."  (PageID.118.)  The ALJ noted, however, that because Plaintiff's treatment for psychosis occurred during periods where the record demonstrated that Plaintiff was using drugs or alcohol, his opinion was entitled to "great weight" only to the extent it concerned those periods, and that when Plaintiff's substance use was reduced, the opinion was not entitled to great weight.  (PageID.118, 124.)  Plaintiff argues the ALJ erred in failing to give more weight to Dr. Faridi's opinion.  (PageID.601–603.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).  It is undisputed that Dr.

_____

ability to do any gainful activity.  (PageID.482.)

[3]Moderate limitations were those that resulted in satisfactory, but limited, function. (PageID.482.)

Faridi qualifies as a treating source.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir. Nov.7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

The record shows that Plaintiff was admitted for mental health treatment at Saint Mary's Health Care from May 25, 2012 through June 11, 2012. The assessment found that Plaintiff's psychosis rated an eight on a scale of one to ten. She was also found that have been drinking seven to nine drinks a day for the past two years, frequently used marijuana, and had been

on Adderall for a number of years, with a recent increase in dosage.  These substances were considered to be "[c]ontributing stressors."  (PageID.362.)  Treatment notes from the date of discharge indicate that her physicians' "opinion was that it was likely an Adderall-induced psychosis."  (PageID.367.)  In August 2012, Plaintiff was admitted to a partial hospitalization program at Forest View hospital. (PageID.407) Plaintiff was experiencing "auditory hallucinations, with thought blocking and delay in speech responses." (PageID.409.)  Plaintiff's substance abuse was included as a reason for admission.  (PageID.416.)  At an examination with Ms. Allison Bush, a limited license psychologist, Plaintiff stated that her psychosis began under the influence of alcohol and marijuana.  (PageID.447.)  On November 21, 2012, Dr. Michael McCarthy reviewed the record and found that Plaintiff's condition had "improved greatly" since Plaintiff reduced the use of her alcohol and substance use.  (PageID.194.)   All this provides substantial evidence supporting the ALJ's conclusion that substance use contributed to Plaintiff's psychosis.  As psychosis was the basis for Dr. Faridi's opinion, the ALJ did not err in concluding that the doctor's opinion was due great weight only during those periods in which Plaintiff was abusing substances. Plaintiff's third claim of error is accordingly rejected.

### 4. The ALJ committed reversible error by failing to correctly weigh the medical evidence.

As noted above, on November 17, 2012, Plaintiff met with Ms. Allison Bush, a limited license psychologist and consultative examiner for the state of Michigan disability determination service. Ms. Bush's report was also cosigned by Dr. Dennis Mulder.  (PageID.450.) After providing a history of Plaintiff's illness and summarizing her findings, Ms. Bush assigned Plaintiff a GAF score of 51-55, and concluded that Plaintiff "is able to understand retain and follow simple instructions . . . She is currently working part-time, 20 hours per week.  I think this is a good

11

plan for her however I would question her working full-time as this may provide too stressful pending her continued recovery from psychosis." (PageID.450.)  The ALJ discussed Ms. Bush's report and noted that the GAF score indicated moderate difficulties in social, occupational, or school functioning.  The ALJ stated that "[t]o the extent that this score could be viewed as an opinion that the claimant has significant mental limitations, this conclusion is not consistent with Ms. Bush's own findings.  Furthermore, the assessed GAF score is a snapshot based upon a single evaluation, not based upon a longitudinal treatment history."  (PageID.122.)  Plaintiff argues the ALJ improperly weighed the GAF score assigned by Ms. Bush and failed to discuss her opinion that Plaintiff could not work full time.  The Court disagrees.

As consultative examiners, Ms. Bush's and Dr. Mulder's opinion was not entitled to any particular weight.  *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012).  As noted above, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  *Daniels*, 152 F. App'x at 489; *see also Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010); *Decheney v. Comm'r of Soc. Sec.*, No. 1:13–cv–1302, 20145 WL 4526836, at * 9 (W.D. Mich. July 27, 2015).  Ms. Bush's statement that Plaintiff could not work pertains to whether Plaintiff is disabled, is an issue exclusively reserved for the ALJ, and was not entitled to any special significance.  20 C.F.R. § 416.927(d) (noting statements that a person is disabled or cannot work are not medical opinions, and are issues to be determined solely by the Commissioner because they are administrative findings).  Ms. Bush's opinion that Plaintiff could not work was entitled to no weight, and accordingly Plaintiff can demonstrate no reversible error here.

Regarding the GAF score, the Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Comm'r of Soc. Sec.*, No. 95–1581, 1996 WL 397424 at \*2 (6th Cir. July 15, 1996). A GAF score "may have little or no bearing on the subject's social and occupational functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006). In addition, "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings." *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) (quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764–65 (Aug. 21, 2000)). As the Sixth Circuit has explained:

> GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning.

*Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007). In short, there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 F. App'x at 511. Rather, "the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence." *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (citation omitted). Because the GAF score is not raw data and may have little or no bearing on Plaintiff's social and occupational functioning for purposes of determining disability under the Act, the ALJ's alleged error in evaluating Ms. Bush's assignment of a GAF score was harmless and did not prejudice Plaintiff.

Accordingly, Plaintiff's fourth claim of error is rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.**

A separate judgment shall issue.


Dated:  July 28, 2016                                    /s/ Janet T. Neff
                                                         JANET T. NEFF
                                                         United States District Judge

14